## JOSEPH LESSER vs. ABE L. KLINE.

Third Judicial District, Bridgeport, October Term, 1924.
WHEELER, C. J., BEACH, CURTIS, KEELER and KELLOGG, Js.

In the absence of contract or statutory provision, a landlord is under no obligation to make repairs upon leased premises.

A covenant by a lessee to make all interior repairs neither adds to nor detracts from his obligations already existing at common law; there was, therefore, no merit to the plaintiff's claim in the present case that if his covenant should be construed to limit his duty to the making of ordinary repairs it would relieve him from the burden of making the unusual repairs made necessary by a serious fire upon the premises.

If leased premises are rendered untenantable through no fault or neglect of the tenant, he may, under § 5101 of the General Statutes, continue in possession without paying rent during the period of untenantability, or he may quit possession until the lessor has made proper repairs; but the statute is not open to the construction, urged by the plaintiff, that the lessee may restore the premises and collect the cost thereof from the lessor.

A covenant by the landlord to repair damage by fire cannot be implied from the customary provision in building leases that the lessee will deliver the premises at the expiration of the term in as good condition as at the time of the commencement of the lease "ordinary wear, fire and other unavoidable casualties excepted," since a covenant to repair must rest upon express contract; moreover, that provision is inserted for the sole purpose of protecting the tenant from the harsh rules of the common law, as to impeachment of waste, now modified by § 5101 of the General Statutes.

The trial court excluded evidence that the defendant landlord had collected insurance covering the damage by fire, which the plaintiff offered in support of his claim that the defendant be required to apply the proceeds of the insurance to the repair of the premises. *Held* that this ruling was correct, since the complaint did not set forth sufficient facts concerning the insurance to bring the plaintiff's claim properly before the court.

Argued November 6th, 1924—decided January 30th, 1925.

ACTION by a lessee to recover the sum expended by him in partially repairing the defendant's premises, which had been damaged by fire, and for damages

alleged to have resulted from the defendant's failure to repair, and for a decree that the defendant be required to complete the repair of said premises, brought to and tried by the Superior Court in New Haven County, *Nickerson, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff. *No error.*

On December 14th, 1921, the plaintiff was a tenant of the defendant in a certain building in Bridgeport comprising a store on the ground floor and three upper floors, and a basement beneath, under a written lease for the term of three years from August 15th, 1915, with a right of renewal for twelve years thereafter, made by defendant to the Aimwell Company, and assigned by it to the plaintiff. The basement was accessible only by a stairway leading to it from the store, and the upper floors were accessible from the interior only by a stairway and an elevator. On the above date and for a long time before, and thereafter until the trial of the action, plaintiff conducted on the premises a retail men's clothing business.

On December 14th, 1921, the premises were damaged by fire, without fault or negligence of either plaintiff or defendant, which fire burned and charred the floors, ceiling and walls of the ground floor, and burned and disarranged the electric lighting wires, and burned and charred the stairway. The elevator was so damaged that it could not be used. As a result of the fire, the store upon the ground floor could not be used by the plaintiff for the conduct of his business without repair, and the three upper floors were rendered unserviceable and inaccessible to the plaintiff, because the elevator and stairway were unsafe and inaccessible. Within a reasonable time after the fire the defendant employed a competent builder and made all necessary exterior repairs. Immediately after the fire

the plaintiff requested the defendant to make such interior repairs as would make the premises tenantable by the plaintiff and which were required to repair the damage done by the fire, which the defendant then refused, and has ever since refused to do.

The plaintiff offered no testimony as to the cost of making the interior repairs occasioned by the fire, nor as to the length of time which would have been reasonably required for the making of such interior repairs as were made necessary by the damage. The plaintiff has continuously occupied the premises and conducted his retail business thereon since the fire. He has not used the three upper floors of the building since the fire. Between December 14th, 1921, and January 20th, 1923, the plaintiff expended about $1,700 for interior repairs upon the premises. The plaintiff has paid to the defendant since December 14th, 1921, the rent reserved under the lease, which has been accepted. Each payment was made by the plaintiff under protest.

The lease is in the usual form containing the customary covenant for delivery of the demised premises at the expiration of the tenancy "in as good condition as said premises are now in, ordinary wear, fire and other unavoidable casualties excepted." It also contains a special provision "that the lessor shall make all exterior repairs, and replace any plate glass windows that may be broken, keeping up plate glass insurance for that purpose; also that he will keep in force an elevator liability policy of the same amount as the one now operative. The lessee agrees to make all interior repairs needed or proper for said building at its own expense."

In his complaint the plaintiff alleged and the defendant admitted that the plaintiff had carried on a fire sale of merchandise in the premises. It was also

alleged that the premises were not used for any other purpose, which was denied by defendant and not found proven by the court. As special damage plaintiff alleged the necessity of using extra coal for heating in order to prevent freezing of water and steam pipes. He also alleged a reduced rental value by reason of the fire and the ensuing lack of requested repairs; also loss of business and good will formerly existing, and continuance in the future of such loss. Plaintiff made a motion to rectify the finding, first, by adding the fact that "the elevator was so badly damaged that the city authorities forbade its use"; and, second, by adding a finding that "for a period of three months after said fire the plaintiff was unable to use more than one quarter of the store on said premises for the conduct of its business." This motion was denied by the court, and the denial is made a reason of appeal.

The plaintiff offered testimony to show payment to defendant of insurance arising out of the fire, which was excluded by the court, and plaintiff excepted.

The trial court reached the following conclusions: 1. That the rights of the parties are determined by their written lease. 2. That the defendant was under no obligation under the contract or by operation of law to make repairs upon the interior of the building necessitated by the fire. 3. That payment by the plaintiff of rent under protest did not change the contractual relations of the parties. 4. That judgment should be rendered for defendant.

In addition to error claimed in the refusal of the court to rectify the finding, the plaintiff assigned certain errors arising on the finding, which, together with further facts, will be stated in the opinion.

*Philip Pond,* with whom was *Charles Cohen,* for the appellant (plaintiff).

*William H. Comley,* for the appellee (defendant).

KEELER, J.  The first seven reasons of appeal are all concerned with the fundamental question involved in the construction of the lease; the eighth reason of appeal involves the question as to the admission of testimony as to the existence and adjustment of insurance upon the premises in favor of defendant; the ninth is a general assignment of error, that judgment should have been the other way, which is obnoxious to the provisions of General Statutes, § 5837, requiring specific assignments of error.  The tenth reason of appeal relates to corrections of the finding which the trial court refused to make.

It is claimed by the plaintiff that under the lease the defendant was required to make such repairs as were made necessary by the fire, and sufficient to put the premises in proper condition for use and occupation by the plaintiff for the purposes of his business. At common law the landlord is under no obligation to make repairs upon leased premises; any obligation in that regard must arise from contract or statutory provision.  *Hatch* v. *Stamper,* 42 Conn. 28, 29; *Gallagher* v. *Button,* 73 Conn. 172, 176, 46 Atl. 819; *Rumberg* v. *Cutler,* 86 Conn. 8, 84 Atl. 107.  The question before us is whether the lease in question created rights in the plaintiff not recognized by our common law. The special provision as to repairs contained in the lease amounts to just this, that the defendant added to his common law obligation the burden of making exterior repairs, replacing plate glass windows, carrying insurance for that purpose, and also of carrying an elevator liability policy.  The plaintiff added nothing to his common law duty to repair.  He assumed nothing when he agreed to make needed and proper interior repairs to the building, whether needed for his

own convenience or for keeping it in proper repair so as not to commit waste. A reasonable interpretation of this provision in the lease is that when the landlord agreed to make certain repairs not required by law outside of a special contract, he desired and intended to limit and make definite his undertaking and it was provided that the plaintiff should make all interior repairs.

The plaintiff insists that this contract did not bind him to make more than ordinary repairs, and has no application to the serious situation arising from a fire. We may adopt this construction, and still the contention of the plaintiff is unsound. We may concede that repairs of damage arising from fire were not within the interior repairs contemplated by the contract, but still the plaintiff was held at common law to make them, except as relieved by General Statutes, § 5101, which provides that when leased property becomes untenantable for some reason not the fault or neglect of the tenant, he may be relieved from payment of rent if he continue to occupy, until the landlord shall restore the premises to tenantable condition, when he shall resume payment of rent, or, if he so elects, he may quit possession in the meantime. Under this statute when the damage by fire occurred, the plaintiff if the premises became untenantable had the right to continue in possession without payment of rent, or to quit possession and resume it after proper repairs had been made, and then the original obligation to pay rent, suspended only by the statute, would be revived. *Miller* v. *Benton,* 55 Conn. 529, 547, 18 Atl. 678. The right conferred by statute upon plaintiff was to stay upon the leased premises and refuse to pay rent, or to get out and refuse to pay until they were made tenantable.

The statute in question has been before us frequently

for construction, but the claim has never before been made that it imposes upon the landlord the duty to repair. He may do so within a reasonable time, and the tenant is then bound to make payments of rent. The statute can in no way be twisted to confer upon the tenant the right to go ahead and make repairs at the charge of the landlord and collect the cost. And no burden to pay for loss of business, good will or diminished rental value, is placed upon a landlord. He simply loses his rent, unless and until he restores the premises to a tenantable condition. A New Jersey statute very similar in terms to our own has received such a construction. *Sayre* v. *Roseville Motor Co.*, 85 N. J. L. 10, 91 Atl. 596.

It is further urged that the customary provision in this lease providing for the delivery of the premises up to the defendant at the conclusion of the tenancy in as good condition as at the time of the commencement of the lease, "ordinary wear, fire and other unavoidable casualties excepted," raises an implied contract on the part of the landlord to repair in case of fire. Clearly such is not the intent or proper construction of this clause. The words just quoted are to be taken in connection with the words occurring earlier in this paragraph of the lease, that the tenant "will commit no waste," and are designed solely to protect the tenant from impeachment of waste. It is a standard clause inserted at an early date in ordinary leases in order to guard against the possible application of certain strict rules of the English common law bearing heavily upon a tenant, with reference to his duty to rebuild structures destroyed by fire, and the effect of such destruction upon his continued obligation to pay rent, a very necessary provision until the matter was settled by the statute of 1859, now General Statutes, § 5101. A covenant to repair

will not be implied. It must rest upon express contract. *Gulliver* v. *Fowler*, 64 Conn. 556, 566, 30 Atl. 852; *Witty* v. *Matthews*, 52 N. Y. 512; *Liebmann* v. *Aldhous*, 105 Misc. 728, 173 N. Y. Supp. 553; *Kennedy* v. *Watts*, 142 Mo. App. 103, 105, 106, 125 S. W. 211; *Turner* v. *Townsend*, 42 Neb. 376, 378, 60 N. W. 587; *Clifton* v. *Montague*, 40 W. Va. 207, 21 S. E. 858.

The view which we take renders it unnecessary to consider at length the claim that by payment of rent under protest, the plaintiff so protected himself that he could continue in possession, and if repairs were not made by the landlord, recover back his payments. By such protest his rights were not enlarged, nor were the obligations of the defendant increased. *Leavitt* v. *Fletcher*, 92 Mass. (10 Allen) 119.

If the claims of the plaintiff for damages were valid, the finding contains no facts furnishing the means of properly assessing damages covering the cost of reasonable repairs and the time required to make them; nor does it appear therefrom what part of the $1,700 expended for restoration of the interior was necessitated by the fire; no proof is made of amounts covering loss of business or loss of profits.

The eighth reason of appeal is concerned with the claimed error of the court in rejection of testimony as to the collection of insurance by the defendant covering loss occurring to the interior of the building. This testimony was offered as the foundation of a claim that this sum received for insurance should be applied to the repair of the damage to interior by reason of the fire. The trial court was not in a position to entertain such a claim. While there is a prayer for equitable relief, that the defendant restore the premises to a tenantable condition, on which such a claim might be held to be before the court, no facts are alleged in the complaint as to the collection of insurance or its

amount. There is nothing on which to found the relief claimed. The evidence was properly rejected by the trial court, and its refusal to correct the finding in regard to the insurance, asked in paragraph four of the motion, was also correct.

The first correction asked for, as above recited in the finding of facts, was properly refused. The lease contains a covenant to carry out all orders made by public authorities of city, county or State, as to repairs or alterations. There is nothing in the record to show that any orders were made by any public authority.

Paragraph two of the motion to correct, under the view we take of the case, is immaterial. It in no way shows any relation of the inability to use a portion of the building to the value of the complete use of the building, and, as we consider the case, has no bearing on any recoverable item of damage. The court properly overruled the remaining requests to correct. From what we have before said, it appears that loss of rental value is no proper ground of recovery.

There is no error.

In this opinion the other judges concurred.